IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOROTHY BYRD, EDWARD CHEW, PATRICIA BRYANT, and WANDA DOREEN DAVIS, | : : : : | |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : : | NO. 12-4520 |
| CITY OF PHILADELPHIA, and BARBARA A. DEELY, Defendants. | : : : : | |

Pratter, J.                                                                                                                October 22, 2013

## MEMORANDUM OPINION

Plaintiffs Dorothy Byrd, Edward Chew, Patricia Bryant, and Wanda Davis, have sued the City of Philadelphia (the "City") and Barbara A. Deely[1], the interim sheriff for the Philadelphia Sheriff's Office, for allegedly discriminatory and retaliatory actions taken against them by Ms. Deely. Presently before the Court is Defendants' Partial Motion to Dismiss Counts II, III, V, and VII[2] of Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to exhaust administrative remedies, and for failure to state a claim upon which relief may be granted.

---

[1] Briefs from both parties and the Complaint reflect different spellings of the Defendant's last name. Defendants use the spelling Deeley and Plaintiffs use the spelling Deely. For this motion to dismiss, the Court will use the Plaintiffs' spelling, Deely.

[2] Defendants have moved to dismiss Counts II, III, and VII entirely, and Count V as to Plaintiffs Chew and Bryant only. Defendants have not moved to dismiss Count I or IV. "Count VI" appears to have been omitted from Plaintiffs' Complaint, it being unclear whether the numbering system used was merely in error or if there was a substantive count that was inadvertently dropped from the final submission.

1

## I. FACTUAL & PROCEDURAL BACKGROUND[3]

Plaintiffs claim that Ms. Deely was appointed to serve as interim sheriff for the Philadelphia Sheriff's Office following Sheriff John D. Green's retirement on December 31, 2010, and she remained as the sheriff until January 2, 2012. Plaintiffs allege that immediately following Ms. Deely's appointment as sheriff, she began discriminating and retaliating against them and other African American employees because of their race.

With regard to Ms. Byrd, Plaintiffs allege that she was demoted because she is an African American. Prior to Ms. Deely's tenure as sheriff, Ms. Byrd served as Deputy Sheriff. Ms. Byrd alleges that Ms. Deely demoted her by transferring her to the Criminal Justice Center as a uniformed officer. After demoting Ms. Byrd, Ms. Deely promoted Richard Verrechio, a white male, to Ms. Byrd's previous position. Additionally, when Ms. Byrd was on sick leave, Ms. Deely directed Mr. Verrechio to check in with Ms. Byrd daily. Thus, Ms. Byrd contends that Ms. Deely demoted and harassed her "for no other reason than she was Black." (Compl. ¶ 36.)

Mr. Chew avers he was discriminated against by Ms. Deely because he is African American. Specifically, Mr. Chew alleges that Ms. Deely terminated him from his position as Director of Legal Services for the Sheriff's Office because of his race. Additionally, Mr. Chew claims he was fired because he had previously admonished Ms. Deely for making derogatory racial remarks about other African American female employees.

Ms. Bryant alleges that Ms. Deely terminated her from her position as Chief of Staff for the Sheriff's Office on December 28, 2011. Ms. Bryant claims that during her employment at the Sheriff's Office, Ms. Deely used sexually and racially offensive terminology to refer to Ms. Bryant. On May 12, 2010, and September 24, 2010, Ms. Bryant filed complaints of disparate

---

[3] The following summary is based on the allegations in Plaintiffs' Complaint, which the Court assumes to be true for purposes of Defendants' Motion to Dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

treatment and race discrimination against Ms. Deely. Thus, Ms. Bryant claims she was terminated for opposing Ms. Deely's discriminatory conduct.

Ms. Davis also asserts that Ms. Deely discriminated against her because of her race. In 2008, Ms. Davis was hired as the Director of Communications and Media for the Sheriff's Office. In July 2010, Ms. Davis was diagnosed with Adult Attention Deficit Hypertensive Disorder, and in December 2010 she took medical leave. Shortly after Ms. Deely took office, she demoted Ms. Davis and replaced her with Ken Smuckler, a white employee. While Ms. Davis was still on medical leave, Ms. Deely allegedly directed an employee to call Ms. Davis and harass and threaten her with termination if she did not return to work. On April 18, 2011, Ms. Deely suspended Ms. Davis because she would not write a letter of resignation. Subsequently, on April 19, 2011, Ms. Deely terminated Ms. Davis and replaced her with a Jeff Travelina, a white male. Ms. Davis avers that she was demoted, harassed, and terminated "for no other reason than that she was Black." (Compl. ¶ 83.)

Based on the above allegations Plaintiffs bring six causes of action. In Counts I and II Ms. Byrd and Ms. Davis allege violations of Title VII. *See* 42 U.S.C. § 2000 *et seq*. In Count III, Mr. Chew and Ms. Bryant bring a claim under 42 U.S.C. §1981. In Counts IV and V, all Plaintiffs bring claims pursuant to 42 U.S.C. §1983 and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, for race discrimination. Finally, in Count VII, Mr. Chew and Ms. Bryant bring claims under the PHRA for retaliation. Defendants' filed a Partial Motion to Dismiss Counts II, III, V, and VII. For the reasons that follow, the Court will grant the motion in part, and deny it in part.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S.Ct. 1289, 1296 (2011) (citation omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Twombly*, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true

4

(even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). The Court also must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. See *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); see also *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not demand the Court turn its back on reality. The Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and quotations omitted), or a Plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted). Finally, "if a [claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d. Cir. 2008).

### III. DISCUSSION

#### A. COUNT II (TITLE VII DISPARATE IMPACT)

Both Counts I and II of the Complaint allege racial discrimination in violation of Title VII. In Count I, Ms. Byrd and Ms. Davis contend that Defendants violated § 2000e-2(a)(1), while Count II alleges a violation of § 2000e-2(a)(2). Defendants assume Count I is a disparate treatment claim and Count II is a disparate impact claim. Defendants request the Court to dismiss Count II of the Complaint because Ms. Byrd and Ms. Davis have (1) failed to exhaust their administrative remedies, and (2) failed to adequately plead a *prima facie* disparate impact claim.

5

However, while the Defendants assume Count II is a disparate impact claim, it is unclear from the Complaint whether Ms. Byrd and Ms. Davis are alleging disparate impact or disparate treatment. Plaintiffs' complaint is filled with disparate treatment allegations. Additionally, in their opposition to Defendants' Motion to Dismiss with regard to Count II, Plaintiffs repeatedly argue that Defendants have established an *intentional* practice and policy of discrimination. Accordingly, it appears that Plaintiffs are asserting disparate treatment claims in both Count I and Count II. Thus, while § 2000e-2(a)(2) is often cited in the disparate impact context, Defendants' have not established that § 2000e-2(a)(2) is only applicable to disparate impact claims,[4] and, accordingly, to the extent that Count II alleges disparate treatment, the Court will not dismiss those allegations. However, as will be discussed below, to the extent that Count II alleges disparate impact, Defendants are correct that those allegations must be dismissed.

Disparate impact discrimination is a brand of "unintentional discrimination," whereby an employer adopts certain practices that are "facially neutral in their treatment of different groups" but "in fact fall more harshly on one group than another and cannot be justified by business necessity." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52, 124 S. Ct. 513, 157 L.Ed.2d 357 (2003) (quoting *Teamsters v. United States*, 431 U.S. 324, 335–336, 97 S. Ct. 1843, 52 L.Ed.2d 396 (1977)). In the case of disparate impact discrimination, employers act without a deliberately discriminatory motive, but their actions are functionally equivalent to intentional discrimination. *Watson v. Ft. Worth Bank and Trust*, 487 U.S. 977, 987, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

---

[4] Section 2000e-2(a)(2) explains that is shall be unlawful "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

"To establish a prima facie case of disparate impact, a plaintiff must first identify a specific employment practice that is facially neutral." *Thompkins v. Mercy Philadelphia Hosp.*, No. 10-2188, 2010 WL 3719099 (E.D. Pa. Sept. 20, 2010) (citing *Foxworth v. Pa. State Police*, 402 F. Supp. 2d 523, 534 (E.D. Pa. 2005). In their Complaint, Ms. Byrd and Ms. Davis fail to identify a facially neutral policy that had a disparate impact on African American employees. Instead Ms. Davis and Ms. Byrd claim that Ms. Deely intentionally discriminated against them "for no other reason than that [they were] Black." (Compl. ¶ 41, 83.) Therefore, to the extent that Ms. Byrd and Ms. Davis base their racial discrimination claims on disparate impact, Count II fails, and those claims will be dismissed without prejudice to amend the complaint to allege a neutral policy.[5]

### B. COUNT III (SECTION 1981 CLAIM)

"Section 1981 of the Civil Rights Act of 1991 protects equal rights in making and enforcing contracts, which includes 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Daoud v. City of Wilmington*, 894 F. Supp. 2d 544, 556 (D. Del. 2012) (quoting 42 U.S.C. § 1981(b)). The City contends that Ms. Bryant's and Mr. Chew's § 1981 claims are barred because § 1981 does not apply to state actors. The Third Circuit Court of Appeals has established that "§ 1981, while providing extensive rights, does not itself provide a remedy against state actors." *McGovern v. City of Philadelphia*, 554 F.3d 114, 116 (3d Cir. 2009) (emphasis added) (citing *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 731, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)). Instead, a party must bring a claim under 42 U.S.C. § 1983 to enforce the rights guaranteed in § 1981. *Id.* at 121. Thus, the Court will dismiss Ms. Bryant's and Mr.

---

[5] However, Ms. Davis and Ms. Byrd should note that even if they amend the Complaint to allege a neutral policy, a disparate impact claim is still subject to being precluded for failure to exhaust administrative remedies.

Chew's § 1981 claims without prejudice to amend the complaint to allege their § 1981 claims under § 1983.

### C. COUNT V (PHRA - RACE DISCRIMINATION)

Defendants moved to dismiss Count V only as to the claims asserted by Mr. Chew and Ms. Bryant. Specifically, Defendants contend that with regard to Mr. Chew, his PHRA claim must be dismissed because he failed to timely file his claim with the Pennsylvania Human Relations Commission ("PHRC"). With regard to Ms. Bryant, Defendants argue that her PHRA claim must be dismissed because she filed her claim prematurely. *See Tressler v. Pyramid Healthcare, Inc.*, 422 F. Supp. 2d 514, 522 (W.D. Pa. 2006) (explaining that a party must wait a year after filing charges with the PHRC before filing suit in court.) Plaintiffs have agreed to withdraw the claims as to Mr. Chew and Ms. Bryant only. (Pl.'s Opp'n to Mot. to Dismiss at 13.) Accordingly, Count V will be dismissed as to Mr. Chew with prejudice but without prejudice as to Ms. Bryant.

### D. COUNT VII (PHRA - RETALIATION)

Defendants also moved to dismiss the PHRA retaliation claims asserted in Count VII by Mr. Chew and Ms. Bryant, on the same grounds explained above in the discussion of Count V. Plaintiffs have agreed to withdraw these claims. *Id.* at 13. Therefore, Mr. Chew's claims for retaliation under the PHRA will be dismissed with prejudice, and Ms. Bryant's claims for retaliation will be dismissed without prejudice.

### IV. CONCLUSION

For the foregoing reasons, an order consistent with this memorandum will be entered, dismissing allegations of disparate impact contained in Count II; dismissing Count III without prejudice; dismissing Count V with prejudice as to Plaintiff Chew, and without prejudice as to

Plaintiff Bryant; and dismissing Count VII with prejudice as to Plaintiff Chew, and without prejudice as to Plaintiff Bryant.