# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOROTHY BYRD et al.** | : | |
| *Plaintiffs*, | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA et al.,** | : | |
| *Defendants*. | : | **No. 12-4520** |
| | : | |

PRATTER, J.                                         NOVEMBER 6, 2014

## MEMORANDUM OPINION

Dorothy Byrd, Edward Chew, Patricia Bryant, and Wanda Davis sued the City of

Philadelphia (the "City") and one-time Acting Sheriff Barbara A. Deeley[1] for discriminatorily

terminating and/or transferring them on the basis of their race. Defendants move for summary

judgment, pursuant to Federal Rule of Civil Procedure 56, on all five counts in the Amended

Complaint. For the reasons discussed below, the Court will grant the Motion.

## I.   FACTUAL BACKGROUND[2]

Ms. Deeley, a longtime Philadelphia Sheriff's Office employee, served as Acting Sheriff

for one year, from January 1, 2011 through January 1, 2012. She was appointed Acting Sheriff

after the retirement of Sheriff John Green on or about December 31, 2010, and she was replaced

by newly-elected Sheriff Jewell Williams on January 2, 2012. (*See* Deeley Dep. at 7-8).

---

[1] Briefs from both parties and the Amended Complaint reflect different spellings of Ms.
Deeley's last name. Defendants use the spelling Deeley and Plaintiffs use the spelling Deely. For
this Motion, the Court will use the Defendants' spelling, Deeley.

[2] The facts are undisputed unless expressly noted. Where there is a factual dispute, as
long as Plaintiffs have record support for their position, the facts are viewed in the light most
favorable to them.

A.     Plaintiffs' Employment History

Edward Chew worked as an attorney in the Sheriff's Office from April 2006 until February 2011.[3] (*See* Chew Dep. at 29-30; Def.'s Ex. M). Former Sheriff Green made the decision to hire Mr. Chew, (*see* Chew Dep. at 30-31), and Ms. Deeley terminated Mr. Chew in January 2011, (*see id.* at 34-35). Ms. Deeley and Joseph Vignola, a senior official in the Sheriff's Office while Ms. Deeley served as Acting Sheriff, testified in their depositions that the Sheriff's Office was the subject of a federal investigation in 2011, and that then-President Judge Pamela Pryor Dembe directed them to terminate Mr. Chew because she believed he would be implicated in the investigation. (*See* Deeley Dep. at 41; Vignola Dep. at 16-20). Ms. Deeley and Hope Smart, the Director of Human Resources for the Sheriff's Office, testified that Mr. Chew was permitted to retire in lieu of termination. (*See* Deeley Dep. at 40; Smart Dep. at 55-57). Although Mr. Chew's personnel records state that he retired voluntarily, (*see* Def.'s Ex. N), Mr. Chew disagrees and claims that he was terminated involuntarily, (*see* Chew Dep. at 193-94). Mr. Chew was replaced by Crystal Powell, another African-American employee in the Sheriff's Office. (*See* Deeley Dep. at 63). Mr. Chew believes that his termination was racially motivated because (a) he is black, (b) he confronted Ms. Deeley about alleged racially insensitive comments, (c) he was told by another employee that Ms. Deeley once used the "N" word to refer to former Sheriff Green, and (d) Ms. Deeley terminated black employees and not white employees. (*See* Pl.'s Br. at 5; Chew Dep. at 71-72; *see also* Kinsey Dep. at 56-58). Mr. Chew also testified that he refused to do Ms. Deeley's personal legal work. (*See* Chew Dep. at 120-23).

Patricia Bryant worked in the Sheriff's Office from May 1999 to January 2012, first as an assistant to former Sheriff Green and later as Chief of Staff & Overtime Manager and Services

---

[3] Evidence in the record refers to Mr. Chew's title as either "Director of Legal Services," (*see* Chew Dep. at 32), or "Solicitor," (*see* Def.'s Ex. M).

Coordinator. (*See* Deeley Dep. at 44-45, 47; Bryant Dep. at 12-13). On October 20, 2011, in preparation for the change of administration in the Sheriff's Office, Ms. Bryant and all other exempt employees[4] in the Sheriff's Office were asked to outline their job responsibilities in a memorandum to Mr. Vignola. (*See* Def.'s Ex. Q). Ms. Bryant submitted the requested memorandum on November 4, 2011. (*See* Def.'s Ex. R). Ms. Deeley and Mr. Vignola testified that Sheriff Williams asked Ms. Deeley to terminate Ms. Bryant and several other exempt employees to make space for members of the new administration. (*See* Deeley Dep. at 47; Vignola Dep. at 25-26; Def.'s Ex. S; Def.'s Ex. T; Def.'s Ex. U).

Dorothy Byrd worked as a Deputy Sheriff Officer from October 11, 2001 until her retirement on December 9, 2013. (*See* Byrd Dep. at 17-18; Def.'s Ex. D). Ms. Byrd initially worked in the Internal Affairs Division of the Sheriff's Office. (*See* Def.'s Ex. E). Beginning on January 31, 2011, Ms. Byrd was reassigned to the Criminal Justice Center (the "CJC"). (*Id.*). Ms. Byrd claims that her reassignment was a demotion because (a) her pay was reduced for two pay periods, (*see* Byrd Dep. at 74), and (b) she was not accustomed to working at the CJC, (*see* Oral Arg. Trans. at 33) ("It was adverse because people like to work where they want to work.")). However, the record shows that it is not unusual for Deputy Sheriff Officers to be called upon to provide courtroom security at the CJC. (*See* Kinsey Dep. at 46-47; Def.'s Ex. I at CITY 0836). Ms. Byrd's internal Equal Employment Office ("EEO") file contains testimony from Ms. Deeley that she reassigned Ms. Byrd to the CJC because "[t]here was a need for court room security." (Def.'s Ex. G at CITY 0603).

---

[4] "Exempt employees" are at-will employees who are appointed by the Sheriff and serve at the pleasure of the Sheriff. (Smart Dep. at 27-28).

Wanda Davis worked in the Sheriff's Office from 2008 until April 19, 2011.[5] (*See* Davis Dep. at 68; Def.'s Ex. V). Former Sheriff Green made the decision to hire Ms. Davis. (*See* Davis Dep. at 51). Ms. Davis reported to Ms. Deeley, but their relationship deteriorated when Ms. Deeley became Acting Sheriff. (*See* Davis Dep. at 55-56). In April 2011, in preparation for Ms. Deeley's term as Acting Sheriff, Mr. Vignola instructed Ms. Davis and other exempt employees to provide a job description, resume, and letter of resignation. (*See* Vignola Dep. at 24). Ms. Davis failed to provide the requested materials, and Mr. Vignola suspended Ms. Davis for three days. (*See* Def.'s Ex. X). Mr. Vignola then recommended that Ms. Deeley terminate Ms. Davis. (*Id.*). Ms. Deeley testified that Ms. Davis was terminated based on her performance; according to Ms. Deeley, Ms. Davis conducted only personal business out of the Sheriff's Office. (*See* Deeley Dep. at 57).

### B.   Evidence of Racial Discrimination

The record contains deposition testimony from Plaintiffs and other Sheriff's Office employees that Ms. Deeley frequently made racially charged comments. (*See, e.g.*, Byrd Dep. at 38 ("[Ms. Deeley] would always make comments regarding black people this and black people that."), 40 ("[Ms. Deeley] made this comment, oh, like you blacks stick together . . . ."); Bryant Dep. at 24-26 ("come here black girl"), 33-34 ("[T]here's too many blacks in the office, I'm going to get rid of some of you guys and bring in Italians."); Roberts Dep. at 13 (claiming that Ms. Deeley used the "N" word); Kinsey Dep. at 15-17 ("little black boy"); Chew Dep. at 98-100

---

[5] Ms. Davis's personnel records indicate that she held the position of "Operations Specialist Director," (*see* Def.'s Ex. V), but Ms. Davis testified that she was originally the Director of Communications, (*see* Davis Dep. at 53). Ms. Davis testified that she was demoted in 2010 to the position of Special Assistant to the Sheriff. (*See* Davis Dep. at 59). The Amended Complaint does not allege that Ms. Davis's demotion, which happened before Ms. Deeley became Acting Sheriff, was an adverse employment action for which the City is liable.

("[B]lack people like fried chicken.")). In particular, the record contains deposition testimony that Ms. Deeley made racially charged comments about the physical attributes of black Sheriff's Office employees. (*See, e.g.*, Byrd Dep. at 71 ("One day [Ms. Deeley] referred to Wanda's big black butt. . . . She would look at your breasts and say oh, look at those big black titties."); Bryant Dep. at 82-83; Chew Dep. at 72, 77-83, 92 (claiming Ms. Deeley made "inappropriate comments to—about the anatomy of two African-American females in the office"); Davis Dep. at 62 ("[S]he would make comments about the blacks or comments about my big ass or big butt."), 73 ("She would refer to . . . boobs of some of the other black women in the office."); Smart Dep. at 24-25 (claiming Ms. Deeley told Ms. Davis she had a "big butt"); Roberts Dep. at 17-18). Ms. Smart and Deborah Kinsey, a black Sheriff's Office employee while Ms. Deeley was Acting Sheriff, testified that Ms. Deeley's remarks appeared to be mere banter with the female black Sheriff's Office employees. (*See* Smart Dep. at 24-25; Kinsey Dep. at 17-18).

The record shows that Ms. Deeley terminated only black Sheriff's Office employees, (*see, e.g.*, Byrd Dep. at 73, 77; Kinsey Dep. 36-37, 72-74; Smart Dep. at 34-40, 57-59; Chew Dep. at 137-39), but also that Ms. Deeley hired black employees, (*see, e.g.*, Smart Dep. at 47). The record contains testimony that Ms. Deeley adopted employment practices that favored white employees over black employees. (*See* Bryant Dep. at 39-42, 64-66 (claiming Ms. Deeley punished only black employees for tardiness); Kinsey Dep. at 32-34 (same)). Plaintiffs also point to deposition testimony that the Sheriff's Office did a poor job of providing its employees with racial sensitivity and discrimination training.[6] (*See* Kinsey Dep. at 9, 38; Smart Dep. at 9, 14-15, 18; Deeley Dep. at 11-14; Davis Dep. at 70; Roberts Dep. at 22, 48-49).

---

[6] At oral argument, Plaintiffs' Counsel explained that this case does not include a claim under a failure to train theory. (*See* Oral Arg. Trans. at 28).

II.   **LEGAL STANDARD**

A.   Summary Judgment

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the

materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

B.    Proper Standard of Review for Discrimination Claims[7]

Counts I, II, III, and V of the Amended Complaint are treated differently for purposes of summary judgment depending on the nature of the evidence presented. *See Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267-68 (3d Cir. 2010); *cf. Fakete v. Aetna, Inc.*, 308 F.3d 335, 337-38 (3d Cir. 2002). Where there is direct evidence of discrimination, courts apply the "mixed motives" test set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). Where there is circumstantial evidence of discrimination, courts apply the burden-shifting framework from *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Accordingly, to survive summary judgment on their discrimination claims, Plaintiffs' must either "(1) present[] direct evidence of discrimination that meets the requirements of Justice O'Connor's controlling opinion in *Price Waterhouse*, or (2) present[] indirect evidence of discrimination that satisfies the familiar three-step framework of *McDonnell Douglas Corp. v. Green* . . . ." *Fakete*, 308 F.3d at 337-38.[8] As a

---

[7] Claims under Title VII, 42 U.S.C. § 2000e, *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951, *et seq*., and 42 U.S.C. §§ 1981 & 1983 are all subject to the same analysis. *See Brown v. J. Katz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009); *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999); *Stewart v. Rutgers, The State University*, 120 F.3d 426, 432 (3d Cir. 1997); *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083-84 (3d Cir. 1995).

[8] The Supreme Court has explained that direct evidence is sufficient, but not always necessary, to avoid the *McDonnell Douglas* burden-shifting framework and survive summary judgment. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Thus, in some cases, indirect evidence can be persuasive enough to allow a plaintiff to proceed on a mixed-motive theory. *See*

result, the proper mode of analysis for the Plaintiffs' discrimination claims will turn on whether

Plaintiffs have produced direct or indirect evidence of discrimination.

C.    Analysis of Direct Evidence of Discriminatory Animus

Direct evidence of discrimination is "evidence that is so revealing of a discriminatory

animus that it is not necessary to rely on any presumption from the *prima facie* case to shift the

burden of production." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994). The Third

Circuit Court of Appeals has described direct evidence as the proverbial "smoking gun." *Id.* at

778-79. Justice O'Connor's concurring opinion in *Price Waterhouse* outlined the type of

evidence that would be considered "direct":

> [S]tray remarks in the workplace . . . cannot justify requiring the employer to prove that
> its hiring or promotion decisions were based on legitimate criteria. Nor can statements by
> nondecisionmakers, or statements by decisionmakers unrelated to the decisional process
> itself, suffice to satisfy the plaintiff's burden in this regard. . . . What is required is . . .
> direct evidence that decisionmakers placed substantial negative reliance on an illegitimate
> criterion in reaching their decision.

490 U.S. at 277 (O'Connor, J., concurring); *see Fakete*, 308 F.3d 337 n.2 ("[C]ourts agree on

what is *not* direct evidence—*e.g.*, statements by non-decisionmakers, statements by

decisionmakers unrelated to the contested employment decision, and other 'stray remarks.'").[9]

---

*id.* However, for the parties' convenience, the Court will nevertheless refer to this type of
evidence as "direct evidence."

[9] Justice O'Connor's concurrence can be read to mean either that (a) comments by
decisionmakers who were not involved in the adverse employment action may not constitute
direct evidence of discrimination, or (b) comments that are unrelated to the adverse employment
action, even when made by decisionmakers who were involved in the adverse employment
action, may not constitute direct evidence of discrimination. The Third Circuit Court of Appeals
has at times stressed that direct evidence "must reflect a discriminatory or retaliatory animus on
the part of a person involved in the decisionmaking process," *Armbruster*, 32 F.3d at 768, and at
other times stressed that direct evidence must be "related to the decision process" or a plaintiff's
job performance, *see Hook v. Ernst & Young*, 28 F.3d 366, 375 (3d Cir. 1994). As a result, the

Plaintiffs face a "high hurdle" as they try to produce direct evidence of discrimination. *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 513-14 (3d Cir. 1997).

Here, Plaintiffs argue that the following constitutes direct evidence of discrimination: (1) Ms. Deeley's alleged termination of a number of black employees and no white employees; (2) Ms. Deeley's alleged racially offensive comments before and during her term as Acting Sheriff;[10] and (3) Ms. Deeley's alleged remarks, claimed by her to be jokes, that there were too many black people in the Sheriff's Office, and that she wanted to replace them with Italians. (*See* Pl.'s Br. at 17-19).

The Court finds that Plaintiffs have failed to produce direct evidence of discrimination. First, as to Plaintiffs' reliance on the comparative numbers of firings of black and white personnel, the Third Circuit Court of Appeals has held that statistical evidence of disparate treatment is not direct evidence of intentional discrimination. *See Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1097 (3d Cir. 1995). At most, such statistics provide circumstantial evidence of discrimination. Therefore, the relative number of black and white employees allegedly hired or fired by Ms. Deeley is not direct evidence of discrimination. Second, there is no evidence connecting Ms. Deeley's alleged racially offensive remarks to any of the adverse employment actions. Although Ms. Deeley was the relevant decisionmaker, there is no evidence to show that her stray remarks were at all related to the Plaintiffs' job performances or her decision to terminate and/or reassign the Plaintiffs. *See Hook*, 28 F.3d at 375. Although such

---

Court concludes that neither remarks by unrelated decisionmakers, nor unrelated remarks by decisionmakers, may constitute direct evidence of discrimination.

[10] Plaintiffs allege that Ms. Deeley referred to a young black employee as "that little black boy" and cite to that remark as an additional piece of direct evidence. Because that remark falls within the category of Ms. Deeley's alleged racially offensive comments, the Court will address these remarks together rather than separately.

remarks are certainly in bad taste and bespeak a certain insensitivity, and provide circumstantial evidence of discrimination, there is no apparent connection between the alleged remarks and the alleged adverse employment actions. Even Ms. Deeley's alleged remark regarding Italians, which is the closest thing to direct evidence presented by the Plaintiffs, is not so revealing of discriminatory animus as to constitute a "smoking gun": it is fairly described as "random office banter" and was not made in a serious context. *Fakete*, 308 F.3d at 339-40 (quoting *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1089 (7th Cir. 2000)). As with all of Ms. Deeley's alleged remarks, there is no evidence connecting that remark to any of the Plaintiffs' alleged adverse employment actions. *See Price Waterhouse*, 490 U.S. at 277 (O'Connor, J., concurring) ("What is required is . . . direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion *in reaching their decision*." (emphasis added)); *cf. Maxfield v. Sinclair Int'l*, 766 F.2d 788, 791 (3d Cir. 1985) ("Direct evidence would include statements by the employer to the employee that s/he was being fired because of age.").

Plaintiffs cite no case law in support of their argument that they presented direct evidence of discrimination. Recognizing that it is difficult to muster direct evidence, the Court finds that the evidence in the record in this case of discrimination is circumstantial only. As a result, the proper standard of review for the Motion for Summary Judgment on Counts I, II, III, and V is the *McDonnell Douglas* burden-shifting framework.

D.    *McDonnell Douglas* Burden-Shifting Framework

Under *McDonnell Douglas*, a plaintiff may establish a *prima facie* discrimination claim by showing that (1) she belongs to a protected class; (2) she was qualified for a position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under

circumstances that raise an inference of discrimination. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). If a plaintiff establishes a *prima facie* case, the defendant then must "articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008). If the defendant does so, the plaintiff then has the burden of showing that the defendant's proffered reasons for the adverse action are pretextual. At the summary judgment stage, the plaintiff must meet this burden by submitting "evidence which (1) casts doubt upon the legitimate reason proferred by the employer such that a fact-finder could reasonably conclude that the reason was a fabrication; or (2) would allow the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination." *Id.* (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). The plaintiff must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). Finally, in deciding a dispositive motion under the *McDonnell Douglas* framework, the Court recognizes that "evidence supporting the *prima facie* case is often helpful in the pretext stage, and nothing about the *McDonnell Douglas* formula requires [the Court] to ration the evidence between one stage or the other." *Doe*, 527 F.3d at 370.


## III.   DISCUSSION[11]

### A.   COUNT III (SECTION 1983 AND SECTION 1981)

In Count III of the Amended Complaint, Mr. Chew and Ms. Bryant invoke 42 U.S.C. § 1983 alleging that they were terminated because of their race in violation of 42 U.S.C.

---

[11] For the sake of clarity, the Court will first address the claims in Count III of the Amended Complaint, then the claims in Counts I, II, and V of the Amended Complaint, and finally the claims in Count IV of the Amended Complaint. In addition, although the Plaintiffs rely on the same evidence in support of their various claims, the Court will evaluate the Motion for Summary Judgment as against each Plaintiff's claim separately.

§ 1981.[12] Claims brought under § 1983 alleging violations of § 1981 are analyzed under the

same burden-shifting framework as Title VII. *See Stewart v. Rutgers, The State University*, 120

F.3d 426, 432 (3d Cir. 1997).[13]

### 1. *Prima Facie* Case

For purposes of summary judgment, the City has conceded that Mr. Chew and Ms.

Bryant satisfy the first three elements of a *prima facie* case of discrimination. However, the City

argues that Mr. Chew and Ms. Bryant did not establish a *prima facie* case because they failed to

show that they were terminated under circumstances that raise an inference of discrimination.

"Common circumstances giving rise to an inference of unlawful discrimination include the hiring

of someone not in the protected class as a replacement or the more favorable treatment of

similarly situated colleagues outside of the relevant class." *Bullock v. Children's Hosp. of Phila.*,

71 F. Supp. 2d 482, 487 (E.D. Pa. 1999). Although replacement by someone outside of the

---

[12] Although Plaintiffs' brief mentions retaliation, Plaintiffs have expressly denied that Count III includes a claim for retaliation. (*See, e.g.*, Pl.'s Br. at 28 ("Although 'retaliation' is not alleged in Count III, a trier of fact could also conclude that Defendant Deeley retaliated against Plaintiff Chew."); Oral Arg. Trans. at 27). Similarly, Plaintiffs' brief suggests that the City failed to train its employees on race discrimination, but Plaintiffs have expressly acknowledged that the Amended Complaint does not state a claim based upon a failure-to-train theory. (*See* Oral Arg. Trans. at 28).

[13] Discrimination claims under Sections 1983 and 1981 have the added requirement that a municipality will only be liable for discriminatory acts if it effectively adopted discrimination as an official policy or custom. *See, e.g.*, *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). In other words, municipal liability cannot be based on a theory of respondeat superior, "but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Id.* Plaintiffs can make that showing, under appropriate circumstances, based on a single discriminatory decision by a municipal policymaker. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Although Defendants argue in their brief that the Sheriff is not a policymaker for purposes of municipal liability under § 1983, they declined to advance that position at oral argument. (*See* Oral Arg. Trans. at 33). For purposes of summary judgment, the Court will assume that the Sheriff is a final policymaker whose decisions are capable of exposing the City to liability under § 1983.

protected class is ordinarily sufficient to establish a *prima facie* case, it is not necessary because the Third Circuit Court of Appeals has "explicitly rejected a requirement that a plaintiff prove he was replaced by someone outside the protected class to prove a *prima facie* case of discrimination." *Sarullo*, 352 F.3d at 797 n.7 (citing *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 354 (3d Cir. 1999)). Instead, our Court of Appeals has "repeatedly emphasized that the requirements of the prima facie case are flexible," *Pivirotto*, 191 F.3d at 357, and that "the elements of a prima facie case depend on the facts of the particular case," *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 411 (3d Cir. 1999).

To demonstrate circumstances giving rise to an inference of unlawful discrimination, Mr. Chew and Ms. Bryant point to the deposition testimony of Reverend John Roberts and Deborah Kinsey, two African Americans who worked in the Sheriff's Office while Ms. Deeley served as Acting Sheriff. Reverend Roberts testified that (a) white employees were treated more fairly than black employees, and black employees were reprimanded more harshly than white employees, (b) Ms. Deeley used racially inappropriate language, especially to comment on the anatomy of black female Sheriff's Office employees and when she once used the "N" word to refer to former Sheriff Green, and (c) employees feared retaliation from Ms. Deeley if they opposed her racially insensitive remarks. (*See* Roberts Dep. at 13, 19-21, 50-52). Ms. Kinsey testified that (a) she believed Ms. Bryant was terminated because of her race, (b) she believed Mr. Chew was treated unfairly because he opposed Ms. Deeley's treatment of black employees, (c) she believed Ms. Deeley mistreated black employees, but not white employees, (d) Ms. Deeley made inappropriate racial remarks, (e) Ms. Deeley only terminated black employees, and (f) Ms. Deeley scrutinized tardy black employees more than tardy white employees. (*See* Kinsey Dep. at 30, 32-34, 71). Mr. Chew and Ms. Bryant also point to Ms. Deeley's "persistent and pervasive

racially insensitive speech, and the fact of her firing only Black employees once she assumed office." (Pl.'s Br. at 28).

By giving Plaintiffs the benefit of the doubt, the Court can accept that Mr. Chew and Ms. Bryant have established a *prima facie* case of discrimination, but just barely. They failed to produce evidence regarding similarly situated colleagues: Mr. Chew has not produced evidence involving any other attorney in the Sheriff's Office, and Ms. Bryant has not produced evidence involving a similarly situated exempt employee. *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 647 (3d Cir. 1998). Much of the testimony on which Mr. Chew and Ms. Bryant rely consists of "merely general, conclusory statements about discrimination that were devoid of specific facts," *West v. Hudson Cnty. Corr. Ctr.*, 231 F. App'x 136, 139 (3d Cir. 2007),[14] or irrelevant testimony regarding retaliation rather than discrimination. The record reveals no nexus between Ms. Deeley's racial remarks and her decision to terminate Mr. Chew and Ms. Bryant. *See Johnson v. Hershey Creamery Co.*, No. 11-0776, 2013 WL 877130, at *7 (M.D. Pa. Mar. 8, 2013). Moreover, the record shows that Mr. Chew and Ms. Bryant were replaced by other black Sheriff's Office employees. (*See* Deeley Dep. at 63; Smart Dep. at 50). Although this is not fatal to their case, it certainly weakens the circumstantial evidence that they were terminated under circumstances giving rise to an inference of discrimination.

Nevertheless, the Supreme Court has noted that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Viewing the evidence in the light most favorable to Mr. Chew and Ms. Bryant, Ms. Deeley's alleged remarks and the deposition testimony alleging discriminatory employment

---

[14] For example, Ms. Kinsey's "beliefs" must be disregarded for summary judgment purposes because "[c]ourts of appeals have repeatedly held that statements of personal belief will not suffice in the summary judgment context." *Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 804 (W.D. Pa. 2013) (listing cases).

practices demonstrates the "circumstances" necessary to establish a *prima facie* case of discrimination. As a result, despite evidence that affirmatively cuts against the prospect of discrimination, Mr. Chew and Ms. Bryant have established a *prima facie* case of discrimination.

2.      Legitimate, Nondiscriminatory Reason

Having established a *prima facie* case of discrimination, the burden shifts to the City to articulate legitimate, nondiscriminatory reasons for the terminations of Mr. Chew and Ms. Bryant. The City has met this burden. Ms. Deeley and Mr. Vignola testified that President Judge Dembe instructed them to terminate Mr. Chew because of an ongoing federal investigation of the Sheriff's Office. (*See* Deeley Dep. at 41; Vignola Dep. at 16-20). They also testified that incoming Sheriff Jewell Williams asked Ms. Deeley to terminate Ms. Bryant as part of the transition to his new administration. (Deeley Dep. at 47; Vignola Dep. at 25-26). In support of the legitimate, nondiscriminatory reason for terminating Ms. Bryant, the City has produced two pieces of documentary evidence: an October 20, 2011 Memorandum instructing Ms. Bryant and other exempt employees to submit memoranda outlining their job responsibilities "[i]n preparation for the change of administration in the Philadelphia Sheriff's Office," (Def.'s Ex. Q), and Ms. Bryant's subsequent memorandum dated November 4, 2011, (Def. Ex. R).

3.      Pretext Analysis

The articulation of legitimate, nondiscriminatory reasons for terminating Mr. Chew and Ms. Bryant shifts the burden back to the Plaintiffs "to show that the [City's] articulated reasons are pretextual." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992). There are two alternative ways for Plaintiffs to meet this burden. First, Mr. Chew and Ms. Bryant

can produce evidence that "casts doubt upon the legitimate reason proffered by the employer such that a fact-finder could reasonably conclude that the reason was a fabrication." *Doe*, 527 F.3d at 370 (citing *Fuentes*, 32 F.3d at 764). Alternatively, they can produce evidence that "would allow the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination." *Id.* To survive summary judgment, Mr. Chew and Ms. Bryant "must present evidence contradicting the core facts put forward by the [City] as the legitimate reason for its decision." *Cridland v. Kmart Corp.*, 929 F. Supp. 2d 377, 387 (E.D. Pa. 2013) (citing *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)) (internal quotation marks omitted). For the reasons that follow, the Court finds that neither Mr. Chew nor Ms. Bryant have made that requisite showing.

Mr. Chew and Ms. Bryant can try to satisfy the first prong of the pretext analysis by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the proffered nondiscriminatory reason did not actually motivate the employer's action." *Fuentes*, 32 F.3d at 765; *see also Roebuck v. Drexel Univ.*, 852 F.2d 715, 717-25 (3d Cir. 1988) ("If a plaintiff produces credible evidence that the employer did not act for its proffered reason, then the employer's decision remains unexplained and the inferences from the evidence produced by the plaintiff may be sufficient to prove the ultimate fact of discriminatory intent." (internal quotation marks omitted)). The first prong of the pretext analysis ordinarily requires the plaintiff to produce evidence showing that the legitimate, nondiscriminatory reason is so implausible that a reasonable factfinder could not believe it. *See Connolly v. Pepsi Bottling Group, L.L.C.*, No. 06-1462, 2008 WL 4412090 (W.D. Pa. Sept. 22, 2008).

Mr. Chew and Ms. Bryant have failed to produce sufficient evidence from which a reasonable factfinder could disbelieve the stated reasons for their terminations. Mr. Chew and Ms. Bryant argue that the City's proffered reasons should not be believed because (1) there is no written directive from President Judge Dembe or Sheriff Williams[15] that Ms. Deeley should terminate anyone, (2) neither President Judge Dembe nor Sheriff Williams testified that they directed Ms. Deeley to terminate anyone, and (3) Ms. Smart testified that the Sheriff makes all hiring and firing decisions. (*See* Pl.'s Br. at 29). These arguments do not render the proffered reasons so implausible that a reasonable factfinder could choose to disbelieve them. First, Ms. Deeley and Mr. Vignola testified that they were told orally to terminate Mr. Chew and Ms. Bryant. (*See* Deeley Dep. at 41, 47; Vignola Dep. at 16-20, 25-26). Plaintiffs have presented no evidence to suggest that personnel decisions require written directives or that the absence of a written directive is either inconsistent with that testimony or creates doubts as to the City's proffered reasons. Second, the fact that neither party deposed President Judge Dembe or Sheriff Williams has no bearing on the pretext issue because the City's burden was merely to *articulate* a legitimate, nondiscriminatory reason and it has done so. *See Burdine*, 450 U.S. at 260 ("[T]he defendant bears only the burden of explaining clearly the nondiscriminatory reasons for its actions."). Plaintiffs could have deposed President Judge Dembe or Sheriff Williams if they wished to try to discover inconsistencies in the City's proffered reasons, but they did not. Third, the fact that the Sheriff makes all hiring and firing decisions is neither disputed by the City, nor inconsistent with the proffered reasons for the terminations: the City's proffered reasons speak to *why* Ms. Deeley terminated Mr. Chew and Ms. Bryant, not *whether* she terminated them.

---

[15] Although the argument in Plaintiffs' brief is directed almost exclusively at the legitimate, nondiscriminatory reason involving President Judge Dembe, the Court will assume that Plaintiffs make the same arguments with respect to Defendants' arguments of legitimate, nondiscriminatory reasons involving Sheriff Williams.

Mr. Chew and Ms. Bryant also argue that "a jury would be entitled to disbelieve" the City's proffered reasons and "the Court may not assume that . . . a legitimate, nondiscriminatory reason even existed." (Pl.'s Br. at 30). It appears that they misunderstand their burden at this stage of the litigation. At summary judgment, the non-moving party cannot "avoid summary judgment simply by arguing that the factfinder need not believe the defendant's proffered legitimate explanations . . . ." *Fuentes*, 32 F.3d at 764. Instead, the non-moving party must point to *evidence* that undermines the moving party's proffered reasons. *See Mimi Ma v. Westinghouse Elec. Co., LLC*, 559 F. App'x 165, 169 (3d Cir. 2014) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). Mr. Chew and Ms. Bryant have not shown that the City's reasons for terminating them are unworthy of credence, so they cannot survive summary judgment under the first prong of the pretext analysis.

Nevertheless, Mr. Chew and Ms. Bryant can try to satisfy the second prong of the pretext analysis (and thereby elude summary judgment) by "adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 764.[16] The Third Circuit Court of Appeals has "applied the principles explained in *Fuentes* to require plaintiffs to present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Kautz*, 412 F.3d at 467. In other words, "the plaintiff's evidence rebutting the

---

[16] The relevant portion of Plaintiffs' brief focuses entirely on the first prong of the pretext analysis. Plaintiffs do not expressly present an argument under the second prong of the pretext analysis. However, Plaintiffs "may not be forced to pursue any particular means of demonstrating that [their employers'] stated reasons are pretextual," *Patterson v. McLean Credit Union*, 491 U.S. 164, 188 (1989), and the evidence supporting the *prima facie* case may be used to prove pretext, *Doe*, 527 F.3d at 370. Therefore, the Court will analyze the second prong of the pretext analysis and consider whether, in light of the City's proffered reasons for terminating Mr. Chew and Ms. Bryant, a reasonable factfinder could find that discrimination was more likely than not a determinative factor in the terminations.

employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . did not actually motivate the employment action." *Fuentes*, 32 F.3d at 764. A plaintiff may prove pretext under the second prong of the pretext analysis by showing, for example, "that the defendant had previously subjected the same plaintiff to unlawful discriminatory treatment, that it had treated other, similarly situated persons not of his protected class more favorably, or that it had discriminated against other members of his protected class or other protected categories of persons." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 277 (3d Cir. 2010) (internal quotation marks omitted). In all cases, the second prong of the pretext analysis requires the Court to consider "whether the employer's proffered reasons are pretextual," and to dismiss mere "alternative theories advanced by the plaintiff." *Kautz*, 412 F.3d at 469 n.2.

The Court finds that Mr. Chew and Ms. Bryant have not satisfied the second prong of the pretext analysis. Mr. Chew and Ms. Bryant rely primarily on deposition testimony regarding Ms. Deeley's alleged racial remarks. To determine whether Ms. Deeley's racially charged remarks are sufficient to demonstrate pretext, the Court will consider "(1) the relationship of the speaker to the employee and within the corporate hierarchy; (2) the temporal proximity of the statement to the adverse employment decision; and (3) the purpose and content of the statement." *See Youry v. Exec. Transp. Co.*, No. 11-4103, 2013 WL 4774447, at *5 (E.D. Pa. Sept. 6, 2013) (quoting *Parker v. Verizon Pa., Inc.*, 309 F. App'x 551, 558-59 (3d Cir. 2009)). The Court highlights that "statements evidencing animus by a decision maker can support a showing for pretext, but such comments must be related to the employment decision. Statements divorced from the employment decision are properly characterized as 'stray remarks.'" *Kargbo v. Phila. Corp. for Aging*, No. 13-1216, 2014 WL 1632193, at *11 (E.D. Pa., Apr. 22, 2014) (citing *Hook*,

28 F.3d at 375). Stray remarks, standing alone, "are insufficient to create a triable issue of fact." *Kim-Foraker v. Allstate Ins. Co.*, 834 F. Supp. 2d 267, 280 (E.D. Pa. 2011).

Mr. Chew and Ms. Bryant have presented evidence that Ms. Deeley made decidedly racially insensitive remarks, but the purpose, context, and content of her alleged statements were entirely unrelated to the terminations. *See supra* Part I.B. Although Ms. Deeley was the Acting Sheriff who actually terminated Mr. Chew and Ms. Bryant, Plaintiffs have failed to show that Ms. Deeley's comments related to Ms. Deeley's view of Plaintiffs' ability to perform their jobs, *see Hook*, 28 F.3d at 375-76, or that Ms. Deeley made the comments in a serious context, *see Fakete*, 308 F.3d at 339. In addition, Mr. Chew and Ms. Bryant have presented no evidence contradicting the "core facts" put forward by the City to justify its decision. *See Kautz*, 412 F.3d at 467. Indeed, the record shows that Ms. Deeley hired African Americans to work in the Sheriff's Office, (*see, e.g.*, Smart Dep. at 47), and that both Mr. Chew and Ms. Bryant were replaced by Sheriff's Office employees of the same race as Plaintiffs, (*see* Deeley Dep. at 63; Smart Dep. at 50).

Plaintiffs' remaining evidence under prong two is insubstantial. Mr. Chew[17] and Ms. Bryant[18] rely on various unrelated instances of alleged discrimination, but the Court finds that

---

[17] Plaintiffs' brief argues that there are five reasons why Mr. Chew's termination was discriminatory: (a) Mr. Chew is black, (b) Mr. Chew confronted Ms. Deeley about her alleged racially insensitive comments, (c) Mr. Chew was told by another employee that Ms. Deeley once used the "N" word to refer to former Sheriff Green, (d) Ms. Deeley terminated black employees and not white employees; and (e) Mr. Chew refused to assist Ms. Deeley's with her private legal problems. (*See* Pl.'s Br. at 5). Although these facts provide circumstantial evidence of discrimination, they do not satisfy the second prong of the pretext analysis. Two of the reasons relate to retaliation rather than discrimination, and the other facts do not provide adequate grounds to question the "core facts" of the City's legitimate, nondiscriminatory reason for Mr. Chew's termination.

[18] Plaintiffs' brief includes the following arguments for why the City's stated reason for terminating Ms. Bryant is pretext: (1) Ms. Deeley would call her and other black employees names like "douche bag, strap job, and black girl," but Ms. Deeley would not call white

Plaintiffs have produced insufficient evidence for a reasonable jury to decide that Ms. Deeley terminated them because of their race. [19]

The Court's task is to decide whether Plaintiffs can demonstrate pretext, not whether they can articulate a nefarious alternative explanation for the adverse employment action. *See Kautz*, 412 F.3d at 469 n.2. Because Mr. Chew and Ms. Bryant have failed to do so, and since the Court has already held that they failed to satisfy the first prong of the pretext analysis, the Court will grant the City's Motion for Summary Judgment on Count III.

---

employees by such names; (2) Ms. Deeley's remark, claimed by her to be a joke, that there were too many blacks in the office and that she was going to replace them with Italians; (3) Ms. Deeley changed the work hours of many black exempt employees and was more lenient to white employees who were tardy; (4) only black employees were transferred or terminated; and (5) Ms. Deeley allegedly warned witnesses in an EEO complaint not to support Ms. Bryant. (*See* Bryant Dep. at 24-26, 33-42, 52-54, 64-66). However, those arguments do not satisfy the second prong of the pretext analysis. First, Ms. Deeley's alleged warnings regarding the EEO may be probative of retaliation, but they are not probative of discrimination. Had Ms. Bryant advanced a claim for retaliation, that evidence would be relevant. Because she did not, the evidence is irrelevant. Second, Ms. Bryant's allegations that Ms. Deeley treated white employees differently are misguided because "in determining whether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action." *Simpson*, 142 F.3d at 647. Ms. Bryant has not produced evidence that similarly situated white employees (i.e., white employees designated for termination by former Sheriff Green) were treated differently than Ms. Bryant. Finally, Ms. Bryant's arguments do not call into question the "core facts" of the City's proffered reason for her termination. The ultimate issue is whether there is sufficient evidence that Ms. Bryant's *termination* was discriminatory, in light of the City's legitimate, nondiscriminatory reason. The evidence is simply insufficient to make that showing.

[19] Plaintiffs direct the Court's attention to *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074 (3d Cir. 1996), to suggest that the Court must consider the totality of the circumstances and consider circumstantial evidence of discrimination. This is undoubtedly true. But because *Aman* involved a hostile work environment claim and Plaintiffs allege disparate treatment, the ultimate question in the two cases is different. In *Aman*, the issue was whether the extremely toxic and discriminatory environment itself detrimentally affected the plaintiff. Here, the issue is whether the specific adverse employment actions in this case were the result of race discrimination. Although the *Aman* court concluded that a reasonable jury could find the alleged conduct to be hostile or abusive, there is simply not enough evidence for a reasonable jury to find that the particular employment decisions at issue in this case were motivated by race discrimination.

B.    <span style="font-variant: small-caps">Count I, II, and V (Title VII and the PHRA)</span>

In Counts I, II, and V of the Amended Complaint, Ms. Byrd and Ms. Davis allege that the
City terminated them because of their race in violation of Title VII and the PHRA. Because there
is no direct evidence of discrimination, *see supra* Part II.C, the Court will analyze these Counts
under the *McDonnell Douglas* burden-shifting framework, *see supra* Part II.D.

1.    *Prima Facie* Case

For purposes of summary judgment, the City has conceded that Ms. Byrd and Ms. Davis
satisfy the first and second elements of a *prima facie* case. However, the City argues that Ms.
Byrd failed to satisfy the third element of a *prima facie* case, and that Ms. Davis failed to satisfy
the fourth element of a *prima facie* case. In particular, the City argues that (a) Ms. Byrd did not
receive less pay when she was reassigned to the CJC, (b) Ms. Byrd's reassignment required her
to perform tasks that were already within her job description, (c) Ms. Davis has submitted no
evidence that her termination was race-related, and (d) neither Ms. Byrd nor Ms. Davis have
shown that similarly situated non-black employees enjoyed better treatment. (*See* Def.'s Br. at
25-29). Plaintiffs respond, without any legal argument or citation to the record, that it is "quite
evident" that Ms. Byrd and Ms. Davis suffered adverse employment actions because they were
"terminated and/or transferred and demoted." (Pl.'s Br. at 36).

An adverse employment action is "an action by an employer that is serious and tangible
enough to alter an employee's compensation, terms, conditions, or privileges of employment."
*Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004). The Third Circuit Court of
Appeals has held that "employment decisions such as transfers and demotions may suffice to

establish the third element of a plaintiff's prima facie case." *Jones*, 198 F.3d at 411-12. Although "[m]inor actions, such as lateral transfers and changes of title and reporting relationships, are generally insufficient to constitute adverse employment actions," *Langley v. Merck & Co., Inc.*, 186 F. App'x 258, 260 (3d Cir. 2006), they may rise to the level needed to state a claim for discrimination when they are accompanied by a pay cut, *see Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299 & n. 13 (3d Cir. 1997).

Here, there is a dispute of material fact as to whether Ms. Byrd suffered an adverse employment action. Ms. Byrd testified that she was paid at a higher rate when she was placed on a "temporary assignment," (Byrd Dep. at 59), and that her reassignment to the CJC ended that "temporary assignment," (Byrd Dep. at 74). Viewing this testimony in the light most favorable to Ms. Byrd, a jury could find that the reassignment denied Ms. Byrd the opportunity to continue earning a higher salary. The City rightly points out that Deputy Sheriff Officers are routinely called upon to provide courtroom security, (*see* Byrd Dep. at 82-83), but Ms. Byrd would have continued to receive slightly more pay had her reassignment not terminated her "temporary assignment." This is sufficiently tangible to constitute an adverse employment action.

With respect to the fourth element, as was the case for Mr. Chew and Ms. Bryant, Ms. Byrd and Ms. Davis have just barely established a *prima facie* case of discrimination. The Court notes that Ms. Byrd and Ms. Davis failed to produce evidence of (a) similarly situated white Sheriff's Office employees who did not suffer adverse employment actions, and (b) how any of Ms. Deeley's alleged remarks related to their adverse employment actions. In addition, Ms. Byrd and Ms. Davis relied extensively on irrelevant or conclusory statements that are not capable of creating a jury question. However, the Court remains mindful that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. Viewing the

evidence in the light most favorable to Ms. Byrd and Ms. Davis, Ms. Deeley's alleged remarks and the deposition testimony alleging discriminatory employment practices could be said to demonstrate the "circumstances" necessary to establish a *prima facie* case of discrimination.

### 2.      Legitimate, Nondiscriminatory Reason

Having established a *prima facie* case of discrimination, the burden shifts to the City to articulate legitimate, nondiscriminatory reasons for the terminations of Ms. Byrd and Ms. Davis. The City has met this burden. The City argues that Ms. Byrd was reassigned to the CJC because "[t]here was a need for court room security," (Def.'s Ex. G at CITY 0603), and the record shows that Deputy Sheriff Officers are routinely assigned to courtroom security at the CJC. (*See* Kinsey Dep. at 46-47; Def.'s Ex. I at CITY 0836). The City also argues that Ms. Davis failed to satisfy Mr. Vignola's request that she provide a job description, resume, and letter of resignation in preparation for Ms. Deeley's term as Acting Sheriff. (*See* Vignola Dep. at 24). Mr. Vignola then recommended that Ms. Deeley terminate Ms. Davis due to performance deficiencies, such as conducting personal business out of the Sheriff's Office. (*See id.*; Deeley Dep. at 57).

### 3. Pretext Analysis

The articulation of legitimate, nondiscriminatory reasons for terminating Ms. Byrd and Ms. Davis shifts the burden to the Plaintiffs to prove that those reasons are pretextual. As was the case for Mr. Chew and Ms. Bryant, Ms. Byrd and Ms. Davis can try to demonstrate pretext in one of two ways. They can point to evidence that "casts doubt upon the legitimate reason proffered by [the City] such that a fact-finder could reasonably conclude that the reason was a fabrication." *Doe*, 527 F.3d at 370. Alternatively, they can point to evidence that "would allow

the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the [adverse action]." *Id.*

With respect to the first prong of the pretext analysis, Plaintiffs failed to respond to the City's legitimate, nondiscriminatory reasons for the allegedly adverse employment actions suffered by Ms. Byrd and Ms. Davis. Plaintiffs' brief focuses the pretext argument on whether Judge Dembe instructed Ms. Deeley to terminate Plaintiffs, (*see* Pl.'s Br. at 37-38), but the City's proffered reasons for terminating Ms. Davis and reassigning Ms. Byrd do not involve Judge Dembe, (*see* Def.'s Br. at 29-30). Plaintiffs have pointed to nothing in the record to suggest that the actual reasons proffered by the City were fabrications or illusory, and have thus not satisfied the first prong of the pretext analysis.

Nevertheless, Ms. Byrd and Ms. Davis can try to satisfy the second prong of the pretext analysis. Like Mr. Chew and Ms. Bryant, Ms. Byrd and Ms. Davis have failed to satisfy the second prong of the pretext analysis. To the extent they rely on Ms. Deeley's alleged racial remarks, they have failed to connect them to the alleged adverse employment actions. *See* supra pp. 19-20; *Johnson*, 2013 WL 877130, at *1. Given that there is no non-conclusory evidence to suggest that Ms. Deeley's alleged racial remarks were connected to her employment decisions or made in a serious context, the fact that some were directed at Ms. Davis is not enough to survive summary judgment. To the extent Plaintiffs rely on Ms. Deeley's alleged preferential treatment of white employees, they have failed to demonstrate how any of the alleged employment practices contradict the "core facts" of the City's proffered reasons for the alleged adverse employment actions. *See supra* note 14; *Kautz*, 412 F.3d at 467. Any other evidence seems to

consist of conclusory assertions or allegations of irrelevant slights unrelated to race discrimination.[20] *See Betts*, 621 F.3d at 252.

Neither Ms. Byrd nor Ms. Davis have succeeded in showing that the City's proffered reasons for terminating Ms. Davis or reassigning Ms. Byrd are mere pretext for discrimination. Therefore, the Court will grant summary judgment on Counts I, II, and V.

### C.   COUNT IV (SECTION 1983 AND THE PRIVILEGES OR IMMUNITIES CLAUSE)

In Count IV of the Amended Complaint, Plaintiffs allege that Defendants' actions "caused each Plaintiff to be subjected to the deprivation of their [sic] rights, privileges or immunities as guaranteed them under the Fourteenth Amendment to the United States Constitution." (Am. Compl. ¶¶ 107, 108). Defendants argue in their Motion for Summary Judgment that Plaintiffs fail to state a claim under the Privileges or Immunities Clause of the United States Constitution.[21]

The Fourteenth Amendment provides, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . ." U.S. Const.

---

[20] For example, Plaintiffs' brief asserts that Ms. Deeley told Ms. Byrd that she did not like black people. (*See* Pl.'s Statement of Undisputed Facts ¶ 36). However, Ms. Byrd's testimony actually stated that Ms. Deeley did not like black people (i.e., it was Ms. Byrd's view that Ms. Deeley did not like African Americans) and that Ms. Deeley told Ms. Byrd that she did not like her. (*See* Byrd Dep. at 35-36, 38). The former statement is conclusory opinion and therefore unable to create a disputed issue of material fact, and the latter statement speaks only to Ms. Deeley's dislike of Ms. Byrd, not of all black people.

[21] Defendants' Motion for Summary Judgment mistakenly asserts that only Mr. Chew and Ms. Bryant purport to bring claims in Count IV of the Amended Complaint. In reality, all four Plaintiffs purport to bring claims in Count IV. (*See* Am. Compl. at 16 ("Wherefore, Plaintiffs Byrd, Chew, Bryant, and Davis, individually and jointly, demand judgment . . . in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) and for all attorney's fees as allowed by 42 U.S.C. § 1988.")). Because the summary judgment analysis of Count IV is the same with respect to each Plaintiff, the Court will assume that Defendants' Motion is properly directed at all the claims and claimants stated in Count IV.

amend. XIV § 1. The Privileges or Immunities Clause protects "rights of national citizenship" such as "the right to inform federal officials of violations of federal law, the right to be free from violence while in the lawful custody of a United States marshal, the right to enter the public lands, the right to vote in national elections, the right to petition Congress for redress of grievances, and the right to pass freely from state to state." *In re Sacred Heart Hosp. of Norristown*, 133 F.3d 237, 245 n.11 (3d Cir. 1998) (internal citations omitted). "[T]he Privileges and Immunities Clause of the Fourteenth Amendment has remained essentially moribund since the Supreme Court's decision in *The Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 21 L. Ed. 394 (1872), and the Supreme Court has subsequently relied almost exclusively on the Due Process Clause as the source of unenumerated rights." *Id.* at 244 (internal quotation marks omitted). In the last hundred years, the Supreme Court has only relied on the Privileges or Immunities Clause in connection with the right to travel. *See Saenz v. Roe*, 526 U.S. 489 (1999). The Court is not aware of any instance in which the Privileges or Immunities Clause has been used to protect against racial discrimination in the employment context.

Count IV of the Amended Complaint fails to state a claim under the Privileges or Immunities Clause. Although it might have been possible to construe Count IV as quoting the "privileges or immunities" language from § 1983 and stating a claim under the Equal Protection Clause of the Fourteenth Amendment,[22] Plaintiffs made it abundantly clear in their Brief and at oral argument that Count IV purports to state a claim under the Privileges or Immunities Clause

---

[22] "Every person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, *privileges, or immunities* secured by the Constitution . . . shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added).

of the Fourteenth Amendment.[23] (*See* Pl.'s Br. at 32-33 ("The Fourth Amendment[24] to the United States Constitution references 'Privileges *and* Immunities' while the Fourteenth Amendment references 'Privileges *or* Immunities.' The Plaintiffs' Amended Complaint correctly references the latter." (emphasis in original))). Consequently, Count IV of the Amended Complaint fails as a matter of law and the Court will grant summary judgment for Defendants.

### IV.   CONCLUSION

The record demonstrates that it may have been difficult to work for Ms. Deeley because she was difficult with her employees. However, there is not enough evidence for a reasonable jury to find that Ms. Deeley terminated or reassigned Plaintiffs because of their race. Therefore, the Court will grant Defendants' Motion for Summary Judgment.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[23] Although Plaintiffs' Brief mentions the Equal Protection Clause, it does so in connection with the Count III of the Amended Complaint rather than Count IV, and the Amended Complaint does not state a claim under the Equal Protection Clause.

[24] Presumably, Plaintiffs intended to refer to Article Four of the United States Constitution. *See* U.S. Const. art. IV, § 2 ("The citizens of each state shall be entitled to all *privileges and immunities* of citizens in the several states." (emphasis added)).